# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DALE E. McCORMICK,                          )
                              Plaintiff,    )
                                            )
v.                                          )        CIVIL ACTION
                                            )        No. 03-2418-KHV
CITY OF LAWRENCE, KANSAS, et al.,           )
                                            )
                              Defendants.   )
_____)

## MEMORANDUM AND ORDER

*Pro se* inmate Dale E. McCormick brings suit under 42 U.S.C. § 1983 against the City of

Lawrence, Kansas and Lawrence police officers Kirk Fultz and Leo Souders for violation of his

constitutional rights.[1]  This matter comes before the Court on defendants' Motion For Summary

Judgment (Doc. #36) filed August 4, 2004.  For reasons stated below, the Court sustains the motion in part.

## I.       Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); accord Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th

Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing

law."  Anderson, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of

---

[1]        Plaintiff also named as defendants Stuart Peck and John Doe.  See Complaint (Doc. #1)
filed August 18, 2003.  Plaintiff did not serve the summons and complaint on these individuals, however,
and the pretrial order does not contain any claims against them.  See Pretrial Order (Doc. #47) filed
October 25, 2005.  Plaintiff has therefore abandoned his claims against Peck and Doe.

evidence.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not rest on its pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment."  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative.  Anderson, 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).  Rule 56(e) also requires that "copies of all papers or

2

parts thereof referred to in an affidavit be attached thereto or served therewith."  To enforce this rule, the

Court ordinarily does not strike affidavits but simply disregards those portions which are not shown to be

based upon personal knowledge or otherwise do not comply with Rule 56(e).  Maverick Paper Co. v.

Omaha Paper Co., Inc., 18 F. Supp.2d 1232, 1234-35 (D. Kan. 1998).

## II.    Facts

The following facts are either uncontroverted or, where controverted, construed in the light most

favorable to plaintiff:[2]

Dale E. McCormick, a 34 year-old male, is confined at the Hutchinson Correctional Facility in

Hutchinson, Kansas.  He describes himself as a "a natural person and civil rights activist."

---

[2]        Defendants urge the Court to disregard plaintiff's affidavit because it is not sworn or
notarized and does not constitute a declaration under penalty of perjury under 28 U.S.C. § 1746.  See
Reply In Support Of Motion For Summary Judgment ("Defendants' Reply") (Doc. #55) filed January 4,
2006 at 1-4.  Under Section 1746, plaintiff may submit an unsworn declaration if it "is subscribed by him,
as true under penalty of perjury, and dated, in substantially the following form: . . . I declare (or certify,
verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing
is true and correct.  Executed on (date).  (Signature)."  28 U.S.C. § 1746.
        Plaintiff's affidavit states as follows: "The undersigned hereby attests to the foregoing facts under
penalty of perjury."  Affidavit Of Dale E. McCormick ("Plaintiff's Affidavit") at 3, Exhibit A to Plaintiff's
Response To Defendants' Summary Judgment Motion ("Plaintiff's Response") (Doc. #53) filed December
12, 2005.  Defendants contend that plaintiff's statement does not comply with Section 1746 because it is
not dated and does not attest to the truth of facts under penalty of perjury.  See Defendants' Reply at 3.
The Court finds, however, that plaintiff's affidavit substantially complies with Section 1746.  See, e.g.,
LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 65 (2d Cir. 1999).  By using the
word "attests," plaintiff states that the facts are true.  See Webster's Third New International Dictionary
(1993) at 141 ("attest" means "to bear witness to: affirm to be true or genuine: certify").  The Court will
consider the date of filing, December 12, 2005, as the date of plaintiff's declaration.  See, e.g., EEOC v.
World's Finest Chocolate, Inc., 701 F. Supp. 637, 639-40 (N.D. Ill. 1988) (failure to write date did not
render declaration invalid; essential requirement under Section 1746 is that date or approximate date be
demonstrable).

On the evening of August 17, 2001, plaintiff was remodeling his house at 907 East 13th Street in Lawrence, Kansas.  Near midnight, he got into his car to drive across town to a friend's house.  While driving south on Tennessee Street, a one-way street, plaintiff noticed a mass of congestion and flashing lights where the City of Lawrence was conducting a sobriety checkpoint.  When plaintiff reached the sobriety checkpoint, officers stopped his vehicle and asked to see his license and registration.  Plaintiff complied with the request and after a short delay, officers returned the items and told plaintiff that he could continue on his way.

After leaving the checkpoint, plaintiff parked his car in an alley and returned to the site on foot.  He stood on the sidewalk on east side of the road where 15 to 20 people had gathered to watch the checkpoint.  From the sidewalk, plaintiff began to protest the checkpoint.  Plaintiff's protest took the form a verbal tirade which was primarily directed at the officers, calling them "gestapo" and "jack booted thugs."  As plaintiff protested, many of the bystanders laughed at the spectacle.

Defendant Kirk Fultz, a Lawrence police officer, was standing near the street close to plaintiff.  Fultz was observing the checkpoint and speaking with his supervisors, Lieutenants Urbanek and Zarnowiec.  At some point, plaintiff turned his attention to Fultz, Urbanek and Zarnowiec and loudly asked what his tax money was buying.  Thereafter, Urbanek and Zarnowiec left the area.  Fultz remained near the street and watched the checkpoint.  Plaintiff continued yelling at the officers.  Within a few minutes, Fultz approached plaintiff and told him that if he did not shut up and go away, officers would arrest him.  Plaintiff responded that "this is America" and that Fultz was perverting society with his laws.

4

Fultz believed that plaintiff was interfering with checkpoint.[3]  Fultz repeatedly approached plaintiff and threatened to arrest him if he did not stop commenting on the sobriety checkpoint.  On several occasions, Fultz physically bumped into plaintiff's chest in an attempt to provoke violence.  After about 30 minutes, Fultz came up and put his face within six inches of plaintiff's face and screamed at plaintiff to shut up and go away or he would take him to jail.  Fultz screamed in a violent and hostile manner, using profanity to the effect of "shut the fuck up" or "get the fuck out of here" or "you're going to fucking jail."  Plaintiff continued to criticize the officers in a loud voice.

Around 1:00 a.m., plaintiff told Fultz that he wanted to go back through the checkpoint, because he believed it was unconstitutional.  Plaintiff told Fultz that if he knew when the checkpoint was ending, he would get back in his car, drive through the checkpoint and leave.  Fultz told plaintiff that the checkpoint would end at 2:00 a.m. and plaintiff left the area.

At 1:30 a.m., plaintiff drove through the checkpoint again to mock police.  Before driving through, plaintiff put the song "Fuck the Police" on his car stereo at a loud volume.  As plaintiff passed through the checkpoint, officers stopped his vehicle and asked if he had been drinking.  Plaintiff replied that he was "very intoxicated, intoxicated on life."  Plaintiff recalls that during the encounter, he was very animated and enjoying himself.  Plaintiff gave officers his identification, which they returned with a pamphlet.  The officers told plaintiff that he could continue on his way.  Plaintiff turned the volume up on his radio and proceeded through the checkpoint, "flipping the bird" to officers.

――――――――――――――――――――

[3]      Defendants contend that on several occasions, plaintiff stepped in front of Fultz and interfered with his ability to observe the checkpoint.  See Memorandum In Support Of Motion For Summary Judgment ("Defendants' Memorandum") (Doc. #37) filed August 4, 2005 ¶ 21.  Construed in the light most favorable to plaintiff, however, the record does not support this contention.  See Plaintiff's Affidavit ¶ 4.

About a block later, plaintiff's car approached Souders. Plaintiff "flipped him the bird" and Souders told him to stop. Plaintiff pulled over. Souders told him to get out of the car. Plaintiff complied and Souders asked what his problem was. Plaintiff replied that he had a problem with the gestapo tactics of the police department. Around that time, Fultz came up and told plaintiff that he got off work at 2:30 a.m., if plaintiff wanted to meet him in the parking lot. Plaintiff understood it as an invitation to brawl. Plaintiff responded that he would be happy to get in a ring with Fultz in a neutral environment, but that he was not about to meet him in a parking lot at 2:30 in the morning. After a couple of minutes, Souders told plaintiff that he could go. Plaintiff got back in his car and started to inch away from the curb, buckling his seat belt. After plaintiff had driven about six inches to one foot, Souders told him to stop. By that time, plaintiff's seatbelt was fastened. Souders proceeded to write plaintiff a ticket for driving without his seatbelt buckled.

Plaintiff drove through the checkpoint a third time, blaring "Fuck the Police" on his car stereo and "flipping the bird" to officers. This time, officers waved plaintiff through and did not stop him.

During the sobriety checkpoint, officers gave one seatbelt citation to plaintiff and two seatbelt warnings to other individuals.

At a subsequent sobriety checkpoint on June 28, 2002, plaintiff had a similar encounter with Fultz. As a result of the encounter, plaintiff filed a lawsuit in this Court. In that case, Judge VanBebber granted summary judgment in favor of defendants, which the Tenth Circuit affirmed. See McCormick, et al. v. City of Lawrence, et al., No. 03-2195-GTV, 325 F. Supp.2d 1191 (2004), aff'd, 130 Fed. Appx. 987 (10th Cir. May 24, 2005).

## II.    Analysis

Plaintiff asserts five theories of relief: (1) that Fultz retaliated against him for exercising rights under

the First Amendment (Count I); (2) that Fultz discriminated against him based on the content of his speech (Count II); (3) that Souders retaliated against him for exercising rights under the First Amendment (Count III); (4) that Souders unlawfully seized him (Count IV); and (5) that the City of Lawrence has an illegal plan, custom or policy which permits or encourages its police officers to interfere with First Amendment rights (Count VIII).[4]  See Pretrial Order (Doc. #47) at 5-7.  Defendants seek summary judgment on all claims. In response to defendant's motion, plaintiff states that he abandons the fifth claim, i.e. that Lawrence has an illegal plan, custom or policy which permits or encourages its police officers to interfere with First Amendment rights (Count VIII).  See Plaintiff's Response (Doc. #53) at 11.

   **A.     Plaintiff's Claim That Fultz Retaliated Against Him For Exercising Rights Under The First Amendment (Count I)**

   Plaintiff claims that while he was peacefully exercising his First Amendment right to verbally oppose and challenge police activity from a public sidewalk, Fultz repeatedly approached plaintiff and threatened to arrest him and repeatedly bumped plaintiff's chest violently in an effort to intimidate him.  See Pretrial Order (Doc. #47) at 3-4.  Defendants maintain that Fultz is entitled to qualified immunity because plaintiff cannot show (1) that he violated clearly established law; (2) that Fultz took action which would have chilled a person of ordinary firmness from exercising his or her rights; and (3) that a nexus exists between Fultz's warning and any protected speech by plaintiff.  See Defendants' Memorandum (Doc. #37) at 16-17.

   Under the doctrine of qualified immunity, discretionary actions by government officials are protected from liability for civil damages unless their conduct violates clearly established statutory

_____

   [4]     The complaint asserted Counts V, VI and VII against Peck and Doe, but plaintiff has abandoned those claims.  See footnote 1 supra.  Because the pretrial order refers to the claims according to the original count numbers, see Pretrial Order (Doc. #47) at 5, the Court does so here.

or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Tenth Circuit has set forth a two-part test for evaluating qualified immunity: First, plaintiff must show that defendants' conduct violated a constitutional or statutory right. Second, plaintiff must show that the law governing the conduct was clearly established at the time of the alleged violation. Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1255 (10th Cir. 1998). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Unless plaintiff satisfies both prongs, defendant will not be required to "engage in expensive and time consuming preparation to defend the suit on its merits." Siegert v. Gilley, 500 U.S. 226, 232 (1991). If plaintiff fails to demonstrate that defendants' conduct violated the law, the Court need not determine whether the law was clearly established. Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993). Thus, the Court first focuses on whether plaintiff has alleged a deprivation of a constitutional right. See County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998).

Any form of official retaliation for exercising one's freedom of speech constitutes an infringement of that freedom. See Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000). An act taken in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act would have been proper if it were taken for a different reason. DeLoach v. Bevers, 922 F.2d 618, 620 (10th Cir. 1990). The unlawful intent inherent in such retaliatory action places it beyond the scope of qualified immunity if the right retaliated against was clearly established. See id.

Plaintiff alleges that Fultz threatened to arrest him and repeatedly bumped into his chest in retaliation for his verbal protest of police activity. In order to prevail on such claim, plaintiff must show that (1) he was

engaged in constitutionally protected activity; (2) defendant's actions caused him to suffer injury which would chill a person of ordinary firmness from continuing to engage in that activity; and (3) defendant's action was substantially motivated by plaintiff's protected activity.  See Worrell, 219 F.3d at 1212.

Defendants maintain that plaintiff cannot show that he was engaged in constitutionally protected activity.  Specifically, defendants contend that it is unclear whether plaintiff was engaged in protected speech because much of his speech involved personal attacks on Fultz and other officers.  See Defendants' Memorandum (Doc. #37) at 16.  The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers, however, and this freedom is one of the principal characteristics by which we distinguish a free nation from a police state.  Houston v. Hill, 482 U.S. 451, 461-63 (1987).  The First Amendment requires officers to act with restraint in the face of verbal challenges to police action.  Id. at 471.  "Speech is often provocative and challenging . . . .  [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."  Id. at 461 (quoting Terminiello v. City of Chicago, 337 U.S. 1, 4 (1949)).  The First Amendment does not protect "fighting words" – that is, "those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke a violent reaction."  Cohen v. Calif., 403 U.S. 15, 20 (1971); Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72 (1942); but see Lewis v. City of New Orleans, 415 U.S. 130, 135 (1974) (J. Powell, concurring) ("fighting words" exception might require narrower application to police officer because properly trained officer should exercise more restraint than average citizen).  Likewise, the First Amendment does not protect activities which interfere with an officer's performance of lawful duties.  See Houston, 482 U.S. at 464, 481.

9

Defendants maintain that plaintiff's protest of police activity is not protected because it involved "fighting words" against the police.  Construed in a light most favorable to plaintiff, the record indicates that while officers were conducting a sobriety checkpoint, plaintiff stood on the sidewalk and criticized officers in a loud voice, saying things like "this is America" and "what is my tax money buying" and calling officers names like "gestapo" and "jack booted thugs."  On this record, the Court cannot conclude as a matter of law that such words are inherently likely to provoke a violent reaction.  A reasonable fact finder could conclude that plaintiff was engaged in protected speech which did not interfere with officers' abilities to conduct the sobriety checkpoint.  Therefore, defendants are not entitled to summary judgment on this ground.

Defendants contend that plaintiff cannot show that Fultz's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity.  Specifically, defendants argue that because plaintiff continued to protest the checkpoint even after Fultz warned him and allegedly bumped his chest, plaintiff cannot show that Fultz's conduct violated his constitutional rights or would have chilled a person of ordinary firmness from exercising his rights.  See Defendants' Memorandum at 17.  In Eaton v. Meneley, 379 F.3d 949, 954 (10th Cir. 2004), the Tenth Circuit noted that an objective standard applies to this analysis.  Thus, the fact that plaintiff may have persevered despite governmental interference does not preclude his suit.  Id. at 955.  On this record, the Court cannot conclude as a matter of law that an officer's threat to arrest and repeated physical "bumping" in the chest would not chill a person of ordinary firmness from continuing to engage in protected activity.

Defendants argue that plaintiff cannot show a nexus between Fultz's warning and any exercise of free speech.  In support of this argument, defendants assert their version of the facts, i.e. that plaintiff was

10

interfering with the sobriety checkpoint.  See Defendants' Memorandum at 17.  As discussed supra, the Court must construe the summary judgment record in favor of plaintiff.  Defendants are not entitled to summary judgment on this ground.

Defendants assert that based on the Court's ruling in plaintiff's other case involving an encounter with Fultz at a subsequent sobriety checkpoint on June 28, 2002, the Court should find that Fultz is entitled to qualified immunity as a matter of law in this case.  See Defendants' Memorandum at 18.  In the other case, the parties submitted a videotape of plaintiff's encounter with police.  See McCormick, 325 F. Supp.2d at 1207.  After reviewing the video, the Court determined that plaintiff engaged in fighting words, not protected speech.  Specifically, the Court found that plaintiff "repeatedly uttered personal and abusive epithets that were inherently likely to produce a violent reaction." Id. (quotation and citation omitted).  Defendants assert that plaintiff's behavior at both checkpoints was consistent.  See Defendants' Memorandum at 18.  The Court, however, does not have a videotape of the events on August 17, 2001.  As discussed above, construed in a light most favorable to plaintiff, the summary judgment record supports an inference that plaintiff was engaged in protected speech.  Defendants are not entitled to summary judgment on this ground.

Defendants argue that the law is not clearly established as to what constitutes "fighting words."  As discussed above, however, construed in plaintiff's favor the record supports a finding that plaintiff did not engage in fighting words.  The law is clearly established that the First Amendment protects a "significant amount of verbal criticism and challenge directed at police officers," Houston, 482 U.S. at 461, so long as the activity does not involve "fighting words" or otherwise interfere with an officer's performance of lawful duties.  See id. at 464, 481.  Defendants are not entitled to summary judgment on this ground.

11

**B.     Plaintiff's Claim That Fultz Discriminated Against Him Based On The Content Of His Speech (Count II)**

Plaintiff claims that because Fultz did not threaten or attack other persons who were performing expressive activity at the checkpoint, Fultz discriminated against him based the content of his speech.  See Pretrial Order (Doc. #47) at 4.  Defendants argue that plaintiff cannot establish that he engaged in protected activity.  See Defendants' Memorandum (Doc. #37) at 19.  As discussed above, construed in a light most favorable to plaintiff, the record suggests otherwise.

Defendants also maintain that content discrimination cases "normally" occur in the context of an ordinance, statute or regulation which limits speech and that they can find no case law which demonstrates that content discrimination principles apply to the facts of this case.  Id.  The Court agrees that content-based speech discrimination cases generally involve a law or regulation which limits speech.  See, e.g., Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 576 (2001) (applying strict scrutiny test to content-based regulation); Los Angeles Police Dep't v. United Reporting Publ'g Co., 528 U.S. 32, 47 n.4 (1999).  Defendants, however, have not convinced the Court that content discrimination principles do not apply to the facts of this case.  Plaintiff alleges that Fultz allowed others on the sidewalk to engage in expressive activity, but not him.  "[C]ommenting on matters of public concern are classic forms of speech that lie at the heart of the First Amendment, and speech in public areas is at its most protected on public sidewalks, a prototypical example of a traditional public forum."  Schenck v. Pro-Choice Network of W. N.Y., 519 U.S. 357, 358 (1997).  The government can exclude speakers from a public forum only when the exclusion is necessary to serve a compelling state interest.  See Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 800 (1985).  If indeed plaintiff was engaged in protected speech, content discrimination

12

principles would prohibit Fultz from taking action to prevent plaintiff's speech without a compelling state interest.  Defendants are not entitled to summary judgment on this claim.[5]

**C.      Plaintiff's Claim That Souders Retaliated Against Him For Exercising Rights Under The First Amendment (Count III)**

Plaintiff maintains that the second time he drove through the sobriety checkpoint, Souders pulled him over and cited him for a seatbelt violation in retaliation for protected speech.[6]  Defendants seek summary judgment on this claim, asserting essentially the same arguments as with plaintiff's retaliation claim against Fultz.  See Defendants' Memorandum at 20.  Defendants provide no discussion regarding the facts as they apply to plaintiff's claim against Souders.  See id.  Construed in a light most favorable to plaintiff, the record supports an inference that Souders pulled plaintiff over and cited him for a seatbelt violation in retaliation for plaintiff driving through the checkpoint while playing the song "Fuck the Police" on his car stereo and "flipping the bird" to officers.[7]  See, e.g., Cook v. Bd. of County Comm'rs, 966 F. Supp. 1049, 1052 (D. Kan. 1997).  On this record, for reasons similar to the Court's analysis regarding the retaliation claim against Fultz, defendants are not entitled to summary judgment on the retaliation claim against

_____

[5]      As a substantive matter, plaintiff's content discrimination claim appears to duplicate his speech retaliation claim.  The Court questions whether he could recover separately for both claims at trial.

[6]      The pretrial order does not contain factual allegations regarding the seatbelt citation, but it is apparent from the briefs that both sides consider this claim still in the case.  The Court therefore deems the pretrial order to incorporate this claim.  The legal theories section is worded broadly and does not specifically mention the seatbelt citation – but alleges that Souders took action against plaintiff in direct response to his speech.  See Pretrial Order (Doc. #47) at 5.

[7]      In light of the fact that the checkpoint resulted in two seatbelt warnings and no other citations, one might reasonably question whether Souders would have issued the citation to plaintiff if he had not expressed his opinion against police activity.

Souders.

### D. Plaintiff's Claim That Souders Unlawfully Seized Him (Count IV)

Plaintiff claims that Souders unlawfully seized him at the checkpoint without probable cause. Defendants argue that Souders did not need probable cause to seize plaintiff's vehicle at a sobriety checkpoint. See Defendants' Memorandum at 22 (citing Mich. Dep't of State Police v. Sitz, 496 U.S. 444, 455 (1990)). Construed in the light most favorable to plaintiff, the record supports an inference that Souders stopped plaintiff after he had successfully passed through the checkpoint. Thus, the Court cannot conclude as a matter of law that Souders stopped the vehicle in the course of performing a sobriety checkpoint. Defendants also argue that Souders had probable cause to seize plaintiff because it is uncontroverted that plaintiff operated his vehicle without a seat belt. Construed in a light most favorable to plaintiff, however, the record supports an inference that plaintiff was wearing his seatbelt the first time Souders asked him to pull over. Defendants have not shown that they are entitled to summary judgment on this claim.

IT IS THEREFORE ORDERED that defendants' Motion For Summary Judgment (Doc. #36) filed August 4, 2004 be and hereby is **SUSTAINED in part.** The Court grants summary judgment in favor of defendants on plaintiff's claim that the City of Lawrence has an illegal plan, custom or policy which permits or encourages its police officers to interfere with First Amendment rights (Count VIII).

The following claims remain in the case: plaintiff's claim that Fultz retaliated against him for exercising rights under the First Amendment (Count I); plaintiff's claim that Fultz discriminated against him based on the content of his speech (Count II); plaintiff's claim that Souders retaliated against him for exercising rights under the First Amendment (Count III); and plaintiff's claim that Souders unlawfully seized

him (Count IV).

Dated this 13th day of February, 2006 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge